UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**ALBERT J. BRYANT**                                                                                    **PLAINTIFF**

V.                         NO. 4:16CV00922-KGB-JTR

**NANCY A. BERRYHILL,**
**Acting Commissioner,**
**Social Security Administration**                                               **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.   Introduction:**

Plaintiff, Albert J. Bryant, applied for supplemental security income benefits on August 5, 2013, alleging a disability onset date of May 7, 2013. (Tr. at 16). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 25). After the Appeals Council denied Bryant's request for review (Tr. at 1), the ALJ's decision became the final decision of the Commissioner. Bryant has now

requested judicial review.

For the reasons stated below, the Court recommends that the ALJ's decision be reversed and remanded for further review.

## II.  The Commissioner's Decision:

The ALJ found that Bryant had not engaged in substantial gainful activity since the application date of August 5, 2013. (Tr. at 18). At Step Two, the ALJ found that Bryant has the following severe impairments: degenerative disc disease, depression, antisocial personality disorder, and disorders of the gastrointestinal system. *Id*.

After finding that Bryant's impairment did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that Bryant had the residual functional capacity ("RFC") to perform the full range of light work, except that: (1) he could only occasionally stoop, crouch, crawl, and kneel; (2) he would be limited to work where interpersonal contact is incidental to the work performed (defining "interpersonal contact" as a limited degree of interactions such as meeting and greeting the public, answering simple questions, accepting payment, and making change); (3) the complexity of tasks must be learned by demonstration or repetition within 30 days, with few variables and little judgment; and (4) the supervision required must be simple, direct, and concrete. (Tr. at 20).

Relying upon the testimony of the Vocational Expert ("VE") at Step Five, the

ALJ found that, based on Bryant's age, education, work experience and RFC, he was capable of performing past relevant work as a cashier. (Tr. at 25). Thus, the ALJ concluded that Bryant was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial

evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

    B.   Bryant's Arguments on Appeal

Bryant argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ erred in his RFC determination, failed to properly develop the record, and did not conduct a proper credibility analysis. For the following reasons, the Court agrees with Bryant.

Bryant suffered from abdominal pain, diarrhea, constipation, vomiting, and weight loss arising primarily from prior gunshot wounds to his midsection and a small bowel obstruction. While the relevant period for determination of disability is August 5, 2013 through the date of the hearing decision (October 23, 2015), medical evidence from both before and after that period is important to consider in this case.

Bryant's ex-wife shot him six times in the abdomen 25 years ago. (Tr. at 83-86, 274). As a result of being shot, he had severe pain and gastrointestinal ("GI") problems that required multiple bowel surgeries. (Tr. at 86, 502). Bryant went to the emergency room at Baptist Health Medical Center ("Baptist") on June 19, 2009 with severe pain, nausea, and vomiting. (Tr. at 520). A CT scan showed a bowel obstruction and he was taken in for emergency resection of his bowel. Bryant

suffered from postoperative ileus and stayed in the hospital for six days.[1] (Tr. at 520).

Bryant was admitted to Baptist again on June 27, 2009 and stayed for 11 days due to acute ileus. (Tr. at 522). He had severe problems with nausea, vomiting and diarrhea, with dehydration. *Id*. After treatment in the hospital, the problems resolved, but he was restricted from heavy lifting for six weeks. *Id.*

The next records of abdominal problems are from Harmony Health Clinic ("Harmony") in 2012 and 2013. Bryant visited the clinic on three separate occasions and, each time, he complained of abdominal pain, constipation, diarrhea and substantial weight loss. (Tr. at 270-282). Records indicate that a colonoscopy, performed two years earlier, was negative. (Tr. at 270). On September 22, 2012, Bryant was prescribed medication for his stomach problems but four months later, he reported that they were not working. (Tr. at 270, 281). He was referred for a gastrointestinal evaluation at UAMS. (Tr. at 270-274).

From February 2013 through January 2016, Bryant sought treatment for

---

[1] Ileus is a partial or complete non-mechanical blockage of the small and/or large intestine. When this blockage occurs the bowel becomes full of gases and fluids. Consequently, patients often report mild abdominal pain and bloating. They may also experience poor appetite, nausea, and, sometimes, vomiting. *The Gale Encyclopedia of Medicine*, Ed. Jacqueline L. Longe, Vol. 4, 2015, p. 2630.

mental health problems from Little Rock Community Mental Health Center ("LRCMHC"). (Tr. at 288-298, 316-328, 369-404). His physical complaints were severe daily abdominal pain, diarrhea, vomiting, and weight loss, which contributed to his diagnosis of Major Depressive Disorder. *Id*. Mentally, he endorsed poor sleep, loss of interest, poor concentration, feelings of worthlessness, and loss of appetite. *Id*. According to clinic notes, a diagnosis of diverticulitis with hemorrhaging "seriously impact[ed] depressive symptoms and depressive symptoms likely impact[ed] physical health as well. (Tr. at 293). Further, Bryant had a "severe mental illness affecting his functioning which required continued [mental health] services. (Tr. at 297). Psychiatric medications did not seem to help Bryant and they upset his stomach. (Tr. at 296, 313).

On November 5, 2013, Dr. Mike Parker, Ph.D., performed a consultative mental examination, during which he diagnosed: only mild limitations in adaptive functioning; Major Depressive Disorder; Cannabis Abuse; Malingering; and Non-Compliance with Treatment. (Tr. at 341-343). According to Dr. Parker, Bryant was exaggerating his symptoms and was "as diligent and persistent in initiating and completing various daily tasks and other personal responsibilities as he chooses to be." (Tr. at 342). However, this evaluation occurred two years before the hearing decision, and Bryant continued mental health treatment for three years *after* he was

examined by Dr. Parker. The record does not reflect non-compliance: Bryant *did* seek out treatment for both his mental and physical problems (trying multiple medications because some did not work and some had negative side effects, attending regular therapy sessions, and undergoing multiple objective tests for his GI problems).

On October 21, 2013, Dr. Joel Cobb, M.D., performed a consultative physical exam and found that, due to abdominal pain and tenderness from multiple surgeries (as well as some chronic neck and shoulder pain), Bryant would have mild to moderate limitations on lifting, carrying, and squatting. (Tr. at 307). Importantly, this exam took place at the beginning of the relevant time period for disability determination, and *before* Bryan sought other significant treatment for his medical problems.

At the suggestion of the Harmony doctors, in 2014 and 2015, Bryant went to UAMS for his GI problems. He reported both constipation and diarrhea, having 4-6 bowel movements a day, and stomach pain that woke him up at night. (Tr. at 457-458). Medical notes reflect his abdomen was tender, with guarding, and he described intolerance to the prescribed ulcer medication. (Tr. at 425-500). Bryant was diagnosed with bile acid malabsorption and IBS. (Tr. at 457-458, 467). He was prescribed antibiotics for stomach irritation and infection (Tr. at 458).

7

Records submitted after the hearing decision show that, in 2016, Bryant saw gastroenterologist Keith Morris, M.D., for severe stomach discomfort. (Tr. at 45). Bryant underwent two colonoscopies, which revealed polyps, Grade 3 hemorrhoids, esophagitis, duodenitis, descending colon, and gastric intestinal metaplasia. (Tr. at 45, 52).

In 2016, Bryant also followed up with mental health treatment at LRCMHC, where he saw Dr. Hugo, Ph.D. (Tr. at 55-59). Bryant continued to suffer from symptoms of depression related to chronic abdominal pain, and he tried a variety of medications, some of which caused intolerable side effects. (Tr. at 55-66). On May 26, 2016, Dr. Hugo completed a mental medical source statement, in which he concluded that Bryant would be impaired in his performance in nine out of seventeen adaptive functioning areas for at least 15% of the workday. (Tr. at 69-70). He added that Bryant would miss 5 or more days of work per month. *Id.*

Dr. Hugo's opinion dovetails with the April 28, 2015 opinion of mental health therapist Tisha Deen, Ph.D., who also works at LRCMHC. (Tr. at 346-347). Dr. Deen found marked impairment in seven out of twenty areas of adaptive functioning. *Id.* The ALJ dismissed Dr. Deen's opinion because it was "inconsistent with the evidence in the record as a whole," and there was "no objective evidence to show that Dr. Deen had a treatment relationship with the claimant since the alleged onset

date." (Tr. at 24). In fact, between January 2013 and October 2015, Dr. Deen saw Bryant 28 times for therapy. (Tr. at 355-356). And the opinions of Dr. Hugo and Dr. Deen are far more consistent with the overall medical evidence than the opinion of Dr. Mike Parker, who only saw Bryant *one time* -- at the beginning of the relevant time period.

While some of the evidence that points to a finding of disability was submitted to the Appeals Council after the hearing decision date, it satisfies the requirements for consideration. The Appeals Council must consider evidence submitted with a request for review if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (*quoting Williams v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir. 1990)). To be "new," evidence must be more than merely cumulative of other evidence in the record. *See Williams*, 905 F.2d at 216 (concluding that psychiatrist's report was new because it was not merely cumulative but instead presented more specific findings and conclusions). To be "material," the evidence must be relevant to a claimant's condition for the time-period for which benefits were denied. *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). The evidence submitted to the Appeals Council in this case meets this test.

When the Appeals Council has considered "material new evidence and

nonetheless declined review, the ALJ's decision becomes the final action of the Secretary." *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995). The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. *See Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). At this point, the Court's "task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence deemed material by the Appeals Council that was not before the ALJ." *See Mackey*, 47 F.3d at 953.

The evidence as a whole does not support the ALJ's decision. The ALJ assigned an RFC that did not incorporate all of Bryant's limitations. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

In formulating the RFC, the ALJ did not properly consider all of Bryant's established impairments, in particular, his near constant abdominal pain, diarrhea, constipation, and weight loss. Bryant said he spent much of his day running to the

bathroom, and sometimes defecating on himself. (Tr. at 81, 91, 94, 317). Based on GI problems and past surgeries, Dr. Cobb found limitations in lifting, carrying, and squatting, which were not reflected in the RFC.[2] (Tr. at 307). And as for psychiatric impairments, Drs. Hugo and Deen found marked limitations in mental functioning that would put Bryant off-task at least 15% of the workday. These opinions were borne out by medical evidence, which revealed that severe abdominal problems contributed directly to mental dysfunction. The ALJ clearly should have considered these opinions. When the ALJ asked the VE if two additional 15-20 minute breaks would be allowed by an employer, the VE said no. (Tr. at 95). Certainly, Bryant's GI problems would require more than two additional bathroom breaks, throughout the workday, so a properly formulated RFC would have eliminated all jobs, according to the VE's responses to hypotheticals. (Tr. at 95-96).

Finally, Bryant's argument that the ALJ should have further developed the record carries weight. Given that the state-agency examinations took place in 2013, two years prior to the hearing decision, and that Bryant's treatment records contradicted those opinions, the ALJ should have obtained follow-up opinions, or ordered another consultative examination. The ALJ has a duty to develop the record

---

[2] The ALJ did not even pose a hypothetical to the VE regarding the limitation on lifting, carrying, and squatting. (Tr. at 92-96).

11

fully, even when the claimant is represented by counsel, and must order a consultative examination if it is necessary to make an informed decision. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). The Commissioner argues that Dr. Deen's opinion was merely a conclusory checkbox opinion with no elaboration, and thus, did not deserve consideration. If the ALJ concurred, he should have contacted her for clarification.

## V.  Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in his RFC determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 12th day of October, 2017.

_____
UNITED STATES MAGISTRATE JUDGE